**IN THE UNITED STATES DISTRCT COURT
NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

Rebecca E. Henry, Dr. Jimmy Wiley,
Rena Butler, et. al.                                                                                      PLAINTIFFS

        vs.

The Clarksdale Municipal Separate
School District, et. al.                                                                                 DEFENDANTS

**MOTION FOR PRELIMINARY INJUNCTION ADDENDUM**

Pursuant to Rule 65 FRCP, Plaintiffs Dr. Jimmy Wiley and Rena Butler pray the Court hold a hearing so as to allow them to demonstrate "Imminence" of Harm, which is not required for grant of permanent injunction. Rodriquez v. DeBuono 175 F.3d227, 235 (2nd Cir. 1999). This case is governed by <u>Brown v. Board of Education</u>, Title VI and the regulations implementing it, including the no-discrimination mandate of 34 CFR 100.3 et. seq. and the 13th, 14th, and 15th Amendments to the Constitution i.e. the Civil War Amendments construed together whose purpose was to give to the newly freed slaves "citizenship equal to that of white people".

Plaintiffs attempted Exhaustion of Administrative Remedies but nothing, not even an acknowledgment therefrom resulted. A Professional Servicer of Process recorded supplement to September 18, 2017 on October ___ at 1:30 p.m. or thereabouts. All of the media and public have placed the charter school as a done deal. All of this without Mississippi employing elementary concepts of due process of law. The Heidelberg Elementary cheating probe has cleared and/or disregarded sworn testimony of two white teachers Ms. Pennington, Test Coordinator, and 4th Grade

Teacher, Ms. Lutts, who signed affidavits swearing that they did not cheat. After their retirement and/or change of job nearly two years later---they changed their stories and said they cheated. They never testified in open session and were not punished nor have their names been mentioned in public media by the State of Mississippi. Three Black professional educators have been and/or are being prosecuted in Bad Faith because unlike the White teachers, they have not changed their stories. An entire school district has had its name repeatedly thrust in the media negatively and by innuendo or inference, individuals who have worked their entire professional careers have had to contend with harm to their good name and reputation.

This Court's law of the case requires pre-clearance before any substantial change can occur in the Clarksdale Municipal School District. The Per Curiam decision by the 5th Circuit, "This is the 5th time this case has been before the Court in some form" . 579f.2d916C This entire record shows Intentional Discriminatory resegregation of/or all Black schools; no attempt to forget and/or go into majority White enclaves; and the whole nature of the Mississippi statute in every line, paragraph and in its entirety. Significant procedure and substantive departures from normally followed State Board of Education policies occurred with the Clarksdale cheating allegations from the beginning and continued throughout the investigative process. The cheating allegations and investigation are germane to this case in that State Superintendent of Education, Dr. Carey Wright, and her department have led the investigation while at the same time Dr. Wright has sat as a member of the Charter School Authorizer Board voting for a charter school to be

approved for Clarksdale while knowingly having an ongoing investigation of the same district underway---an obvious or perceived bias and conflict of interest is undeniable. Dr. Wright has even led a charge to get the Mississippi Legislature to pass a law stating that school districts, not individuals, proven to have cheated on state tests should be required to repay to the state the costs of the investigation. Up to the current date, no school district, including Clarksdale Municipal School District has been proven to have cheated. Neither the MDE not the Mississippi Legislature has submitted a bill to Clarksdale Municipal School District. There is no way Mississippi would pass up the opportunity to show cheating occurred. Given the lengths the MDS Department of Education went to as its investigation unfolded and the countless manpower hours and financial resources used to result in charging three people from one school in a district where multiple schools existed. The plaintiffs are requesting that the upcoming accountability ratings model, the decision to yet again, reclassify and paint a dim picture of the progress made in Black school districts shows racial discrimination on its face receive. Plaintiffs pray for judicial review and consideration as it relates to fairness and likelihood of harm to the district named in this action and other similarly situated districts. Since the November 21, 1985, April 17, 1986, September 18, 1986, November 1986, and January 15, 1987 minutes of the Board of Trustees of the State Institutions of Higher Learning ----Classification of admission standards for entrance into college and the classification of Mississippi School Districts have remained basically the same. In United States v. Fordice, 1125 Ct. 2727 (1992), the Supreme Court found the use and abuse of testing students problematic and suspect.      The Supreme Court

emphasized that the burden of proof falls on each state to establish that it has dismantled its prior de jure segregation system 112 S. Ct. ct 2742. The Supreme Court decision in Shelby County's decision Ala. V Holder 133 S. Ct. 2612 (2013) did not serve to pull all of the troops out of the South as the compromise of 1877 did. School children, parents, and public school districts have Constitution Rights to Citizenship. On the 63rd anniversary of Brown, it is worth repeating; " Today education is perhaps the most important function of state and local governments. Compulsory school attendance laws and the great expenditures for education both demonstrate our recognition of the importance of education to our democratic society. It is required in the performance of our most basic public responsibilities, even service in the armed forces. It is the very foundation of good citizenship. Today it is a principal instrument in awakening the child to cultural values, in preparing him for later professional training, and in helping him to adjust normally to his environment. In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education. Such an opportunity, where the state has undertaken to provide it, it is a right which must be made available to all on equal terms. 347 U.S. 483 (1954).

Respectfully Submitted,

Alvin O. Chambliss Jr., Esq.

Miss. Bar No. 5948

12111 Meadow Place Drive

Houston, TX 77071

aochambliss@gmail.com