IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

REBECCA E. HENRY, et al                                                         PLAINTIFFS

VS.                                                          CIVIL ACTION NO. 2:64cv28-MPM

THE CLARKSDALE MUNICIPAL SEPARATE
SCHOOL DISTRICT, et al.                                                         DEFENDANTS

**ORDER**

Plaintiffs have filed a motion for Temporary Restraining Order and/or Preliminary Injunction against various state defendants, arising out of their opposition to the State's planned establishment of a charter school in Clarksdale. Acknowledging that the instant desegregation action filed in 1964 against the Clarksdale Municipal School District ("CMSD") lacks many of the necessary plaintiffs and defendants in which to seek such injunctive relief, plaintiffs have filed a separate motion for leave to add those parties to this lawsuit. This court concludes that plaintiffs' motion for leave to add parties is not well taken, and, after conducting an emergency hearing on their TRO motion, it concludes that it should likewise be denied.

A TRO or preliminary injunction is an "extraordinary remedy," *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991), and the four elements for such relief are as follows: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will

not disserve the public interest. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). To justify entry of a TRO or preliminary injunction, plaintiffs must "clearly carr[y] the burden of persuasion on all four elements." *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (citation and quotations omitted).

In this case, the immediate "injury" which plaintiffs seek to prevent is the State of Mississippi's issuance of ratings of public schools, which (by this court's understanding) is currently set to occur on October 19, 2017, i.e. today.[1] In their motion for leave to file, plaintiffs assert that:

> The state has changed its criteria 3 times in 3 years. It is scheduled to release another rating on October 19, 2017. We pray this court to issue a TRO with notice so as to freeze and/or maintain the status quo until this court can review violations of constitutional rights of black citizens of Clarksdale Mississippi.

[Motion for leave to file at 6]. Although the pleadings are somewhat unclear on this point, it appears that the issue of school ratings is tied to that of the charter school based on the fact that the State's decision to place a school in Clarksdale over local objections is based largely on a conclusion that the public schools in that city have been underperforming, as evidenced by prior substandard ratings. Thus, plaintiffs apparently believe that if they can stop the State's rating of schools from going forward this week, then this may assist them in their opposition to the establishment of a charter school.

Given the timing of plaintiffs' motion and the fact that this court has conducted a trial in a different matter this week, it has had an undesirably brief period of time in which to consider and rule upon these matters. In fact, this court began to harbor concerns about its basic *jurisdiction* to

---

[1] The exact nature of these ratings procedures is not clear to this court, but plaintiffs represent that at least an important *part* of these procedures is scheduled to occur today.

consider these issues only after it held a TRO hearing yesterday. In particular, this court has developed concerns regarding whether the CMSD, which is a defendant in this case, is actually the party which would have standing to contest the procedures by which the State of Mississippi rates schools in this state. After all, it is the CMSD whose schools will be rated, and it is far from clear to this court that, say, a member of the Clarksdale general public would suffer a sufficiently individualized harm from these ratings to confer standing upon him to seek to enjoin the State's rating process from going forward.

The U.S. Supreme Court has held that the "irreducible constitutional minimum" of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016)(citations omitted). While the CMSD is clearly in agreement with plaintiffs that the proposed charter school would harm local schools, it has not formally joined their motions and its counsel chose not to attend the TRO hearing yesterday. In light of these facts, this court has serious doubts whether the CMSD would itself choose to file a lawsuit against the State of Mississippi seeking to prevent its ratings process from going forward. In the court's view, the fact that the party with the most obvious standing to oppose the State's actions has chosen not to file suit to stop them raises clear jurisdiction concerns regarding whether members of the general public may do so.

This court also has concerns arising from the third or "redressability" prong of the Supreme Court's standing jurisprudence, which is a rather stringent one. *See, e,g. Warth v. Seldin*, 422 U.S. 490, 506, 95 S. Ct. 2197, 2209 (1975)(finding that plaintiffs in a zoning action

had failed to demonstrate that the requested relief would benefit them in a tangible way and thus lacked standing.). This court's concerns in this regard arise from the fact that it is far from clear that, even if it were to enjoin the State's rating process from going forward, this would prevent the charter school opposed by plaintiffs from being built. Indeed, this court's understanding is that the Clarksdale charter school has already been approved by the State,[2] and its establishment seems to be widely regarded as a "done deal." This raises the question of whether, assuming a particular plaintiff is deemed to have properly alleged a personal "injury in fact" from the establishment of the charter school, that harm would be redressed by the injunctive relief he seeks. Plaintiffs' motion for leave to add additional plaintiffs does not allege facts sufficient to assuage this court's concerns on this issue, and this fact clearly militates against granting that motion.

That brings this court to the fact that the lawsuit in which plaintiffs chose to file their motions actually has nothing to do with the process by which the State of Mississippi rates its schools or with the planned establishment of a charter school in Clarksdale. Rather, this is a desegregation case filed in 1964 against the CMSD which, while not completely dormant, appears to be on its last legs. Acknowledging the absence of key parties regarding their motion to enjoin state defendants, plaintiffs ask this court to allow joinder of the real parties in interest and/or the addition of necessary parties, including a number of additional plaintiffs and state defendants. This court finds this request to be without merit, since it would involve transposing what is essentially an entirely new lawsuit upon a decades old litigation which is basically

---

[2]The record is clear that the Clarksdale charter school was unanimously approved by the Charter School Authorizer Board on September 11, 2017.

completed.  This strikes this court as being a recipe for judicial and procedural chaos, and it can discern no advantage whatsoever which would be gained by such a procedure.

In their motion, plaintiffs cite a wide range of procedural vehicles for adding various parties to this case, including FRCP 17, 19, 21, 23 and 24, but they fail to address the specific requirements of any of these provisions.  Plaintiffs' failure to offer specific arguments in this regard is reason enough to defeat their motion, since they have the burden of proving that joinder should be allowed.  This court will not argue with itself on this issue, particularly considering the time constraints resulting from plaintiffs' choice to file their motions at such a late date.  This court reiterates, however, that transposing what is essentially a new lawsuit upon a dormant one of ancient vintage serves no valid procedural purpose.  Moreover, the conclusory nature of plaintiffs' motion leaves this court with a number of jurisdictional concerns, and it may not disregard these concerns by improperly characterizing the claims of new parties as part of an existing case with an established jurisdictional basis.

Given the jurisdictional concerns which exist in this context, it seems far preferable for any plaintiffs who feel that they have standing to contest the State of Mississippi's actions in rating schools and/or in establishing a charter school in Clarksdale to file a separate lawsuit setting forth their claims.  Any such lawsuit should include clear allegations of standing and should plainly state which provisions of the U.S. Constitution plaintiffs allege are violated by the State's actions.  Given that the Eleventh Amendment precludes the recovery of monetary damages against the State in federal court, plaintiffs would presumably be limited to claims for prospective injunctive relief against relevant state officials.  *See Ex Parte Young*, 209 U.S. 123 (1908).  Obviously, any plaintiffs who choose to file suit should serve formal service of process

upon all defendants, and there is no indication on the docket that such has occurred here.[3]
Indeed, this court cannot help but wonder whether plaintiffs chose to piggyback their motions upon an established case on its docket based upon concerns that they would not be able to demonstrate federal jurisdiction in a separate action or because they simply did not wish to deal with such matters as providing formal notice.

Having reviewed the plaintiffs' motion for TRO, this court concludes that it fails to adequately tie the relief they seek into the subject matter of the instant lawsuit, which is the desegregation of the CMSD. To the contrary, the motions make it clear that the relief which plaintiffs seek deals with far broader issues which are not germane here. The first paragraph of plaintiffs' TRO motion, for example, asserts that "[p]laintiffs, Dr. Jimmy Wiley and Rena Butler move the Court to hold an expedited hearing prior to October 19, 2017 to restrain and maintain the status quo until this Court hold [sic] a preliminary inunction hearing on the question of ratings of school districts in Mississippi." Clearly, the question of the "ratings of school districts in Mississippi" is well beyond the scope of this lawsuit, and, once again, this court does not regard this desegregation lawsuit filed in 1964 as being the proper vehicle for the litigation of this issue.

In order to grant a TRO in this particular case, this court would first need to be persuaded that there was an impending harm which would threaten the desegregation of Clarksdale schools. This court understands that there is opposition from many in Clarksdale to the establishment of a charter school there by the State, and this appears to be based largely on a fear that such a school

---

[3]For example, plaintiffs' motions contain no certification that copies of same have been sent to counsel for the state defendants whom they seek to enjoin.

would take some of the best students and state funding from the existing Clarksdale schools. That is very different, however, than alleging that the establishment of a charter school would tend to re-segregate Clarksdale schools. There was very little testimony on the segregation issue at the TRO hearing, and the limited proof which was offered largely involved personal opinions of witnesses that white students might choose the charter school. This court regards such opinions regarding the motivations and plans of others as speculative at best.

The testimony at the TRO hearing centered primarily upon matters far removed from the issue of the desegregation of Clarksdale schools, such as whether certain Clarksdale teachers were improperly found to have cheated on tests. This may or may not be the proper subject of a separate lawsuit by individuals with standing to assert such claims, but this court concludes that this lawsuit is not the proper vehicle in which to do so. There was also a great deal of testimony at the TRO hearing that the establishment of a charter school represented bad public policy, since it was allegedly unneeded and would tend to divert public resources from existing schools. This court expresses no opinion on this issue, but, even if establishing a charter school in Clarksdale is unwise as a matter of public policy, that does not make it a violation of the U.S. Constitution.

The merits of plaintiffs' constitutional arguments aside, to even fall within the scope of this lawsuit, plaintiffs would first have to persuade this court that 1) the State of Mississippi, a non-party to this action, is bound by the prior orders in this case and 2) that its establishment of a charter school would serve to re-segregate Clarksdale schools. Plaintiffs' proof at the hearing was deficient on both counts. Having said that, this court emphasizes that it has been, and remains, more than willing to enforce its prior orders against the actual defendants in this case, most notably the CMSD. On June 1, 2016, for example, this court entered an order finding that

the establishment of a magnet school by the CMSD was consistent with its prior desegregation orders. If the charter school at issue here had likewise been proposed by the CMSD, then this court expects that a similar preclearance would have been required. That is far from the case here, since the CMSD joins plaintiffs in their vigorous opposition to the planned charter school.

In the court's view, the fact that both sides to the original litigation in this case are on the same side of the charter school issue constitutes yet another in a long list of reasons why it would be unwise to allow plaintiffs to add the State of Mississippi as a defendant here. The proposed charter school at issue here was established pursuant to a Mississippi statute which is applicable to school districts throughout the state. While the State is certainly limited by the provisions of the U.S. Constitution in enacting this statute, plaintiffs offer no authority suggesting that it was required to seek preclearance from this court prior to establishing a charter school in Clarksdale. Given the strong opposition to the charter school from many in Clarksdale, it seems likely that this issue would have been raised with this court long before now if such preclearance was required.

Even if these issues were properly raised in a separate lawsuit against the State of Mississippi, subjecting its actions to strict scrutiny under the Fourteenth Amendment would presumably require a showing that its *intent* was to discriminate on the basis of race. Indeed, the U.S. Supreme Court has made it clear that a showing of a discriminatory *impact* would be insufficient in this context, *see, e.g. Washington v. Davis*, 426 U.S. 229 (1976), and demonstrating a state's *intent* to discriminate is a difficult task indeed. Barring such a showing, rational basis scrutiny would presumably apply, and there can be little doubt that educating children is a legitimate state interest. That being the case, it strikes this court that plaintiffs

8

would face an exceedingly heavy burden in demonstrating that the State's actions in this case are unconstitutional. True enough, the TRO motion in this case does offer a generalized assertion that "[s]tarting another school, without doing an environmental impact study on its effect on desegregation shows disrespect for (*Brown v. Board of Education*) and the law." [Motion for TRO at 3]. However, in their motion, the plaintiffs offer no specific proof that the establishment of a charter school would promote re-segregation of Clarksdale schools, and it is difficult for this court to discern how they could demonstrate a likelihood of success on the merits in this case without such proof.

This court's skepticism regarding plaintiffs' motion is heightened by the proof which they do offer in their briefing. Most notably, in support of their claim that the state system for rating schools is flawed, plaintiffs appear to allege that certain Heidelberg Elementary School teachers were improperly found by the Mississippi Department of Education to have engaged in cheating on tests, as follows:

> 1. Frances Smith Kemp, a black teacher, did not acknowledge wrongdoing. She agreed to surrender her license for 2 years and has had them reinstated.
> 2. Tetra Winters, a black teacher, had her license suspended, started the process of appealing the suspension. Do not know current status.
> 3. Lowanda Tyler-Jones, a black principal, had her license suspended for 20 years. She has requested a hearing to appeal. To date no hearing has been held.
> 4. Ms. Pennington White signed an affidavit saying that she did not do anything wrong. After she retired she changed her story. This white person was never really charged, fired or indicted. She was the testing coordinator and librarian. She never reported cheating to Superintendent or district personnel.
> 5. Mrs. Lutts, a white fourth grade teacher signed an affidavit stating she did not do anything wrong. Nearly two years later, after she resigned and took another job she changed her testimony. She was never embarrassed by the State of Mississippi. In fact, this is the first time her name is being mentioned. All of this was kept secret. Mrs. Lutts was never indicted.

[TRO motion at 2-3].

In their motion for preliminary injunction, plaintiffs seek to tie these allegations to this case based on the following rationale:

> The cheating allegations and investigation are germane to this case in that State Superintendent of Education, Dr. Carey Wright, and her department have led the investigation while at the same time Dr. Wright has say as a member of the Charter School Authorizer Baord voting for a charter school to be approved for Clarksdale while knowingly having on ongoing investigation of the same district underway - an obvious or perceived bias and conflict of interest is undeniable.

[Preliminary injunction motion at 2-3].

It seems clear to this court that any allegations of unfairness and/or conflicts of interest arising out of the sanctioning of Clarksdale teachers for cheating is properly raised, if at all, in separate actions filed by the individuals with standing to assert such claims. Even then, any federal claims in this context would need to implicate the Constitution or laws of the United States, since diversity jurisdiction would presumably be lacking. Regardless of whether such claims could be asserted in a separate federal lawsuit, the instant lawsuit is not concerned with any biases or conflicts of interests which a state Department of Education Official may or may not have had in the course of investigating Clarksdale teachers for cheating. Rather, this lawsuit is concerned with the desegregation of Clarksdale schools, and plaintiffs fail to adequately tie their allegations against Dr. Wright and other potential state defendants to the subject matter of this case.

Plaintiffs do offer a large number of affidavits, including from prominent Clarksdale residents, in opposition to the State's decision to establish a charter school in their city. The recurring themes of these affidavits, however, are that such a charter school is not needed, that it would dilute the financial resources available to local schools, and that the State of Mississippi

disregarded the views of local residents in establishing such a school. Typical of these affidavits is the one submitted by Clarksdale Mayor Chuck Espy, who asserts that:

> 1. I submitted a letter dated August 23, 2017 to the Charter School Authorizer Board opposing the approval of the Clarksdale Collegiate Charter School in response to the request for public comment. In my estimation, my letter and the petition bearing the signatures of more than 1400 Clarksdale citizens was ignored and disregarded.
> 2. I am opposed to a charter school receiving funding from the Clarksdale Municipal School District that would otherwise be spent on the children, employees and programs in the CMSD. As mayor of the city duly elected by a majority of Clarksdale citizens, I am an advocate for what is best for Clarksdale and its financial well being.
> 3. I support the continued existence of the Clarksdale Municipal School District as the only public school district within the boundaries of the CMSD and I am opposed to the approval of a charter school.

[Espy affidavit at 1]. This court offers no opinion regarding the merits of these objections to a charter school in Clarkdsale, but plaintiffs have fallen well short of establishing that such a school would serve to promote segregation, which is the concern of this lawsuit.

In light of the foregoing, this court harbors serious concerns regarding both its basic jurisdiction to consider plaintiffs' claims and whether, assuming it would have jurisdiction to consider them in any case, this is the proper one in which to do so. Each of these concerns supports a finding that, rather than attempting to litigate these issues in this case, plaintiffs should assert any claims they might have standing to pursue in a separate lawsuit based on a complaint filed against the proper defendants. Any such complaint should include clear allegations regarding such matters as standing and jurisdiction, so as to permit whichever district judge considers them to evaluate their jurisdictional, procedural and substantive merit.

Plaintiffs appear to acknowledge that the proper parties are lacking in this case, as evidenced by their motion for leave to add additional parties to it. This court concludes that this

motion is not well taken, for the reasons previously stated. In the absence of the proper parties, it would clearly be improper for this court to grant plaintiffs' TRO motion, and it declines to do so. Indeed, even if this court could somehow excuse the absence of various state defendants, and even if it concluded that this desegregation action was a proper vehicle for plaintiffs to assert their claims, the proof at the hearing today fell well short of that necessary to demonstrate a substantial likelihood that plaintiffs would prevail on the merits of their case. As discussed previously, plaintiffs' proof in support of the TRO motion largely consisted of witnesses questioning the wisdom of establishing a charter school in Clarksdale, and proof that the State may have acted unwisely in establishing such a school, even if deemed credible, does not establish that it committed a constitutional violation in doing so. This court will therefore deny plaintiffs' motions for leave to add additional parties and for a TRO, and it strongly suggests that they instead file any claims they might have in a separate lawsuit (assuming they have standing to do so) or appeal its ruling today to the Fifth Circuit.[4]

It is therefore ordered that plaintiffs' motion to add various parties to this lawsuit is denied, and their motion for TRO is likewise denied.

SO ORDERED, this the 19th day of October, 2017.

/s/ Michael P. Mills
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

---

[4] At the TRO hearing, counsel for plaintiffs expressed a hope that this court would grant an additional hearing on their motion for preliminary injunction. However, even assuming that the plaintiffs in this case have standing to seek a preliminary injunction against the State's ratings of school districts (which is far from clear), this court does not regard this case as being the proper one in which to consider their PI motion, for the reasons previously stated. This court can therefore discern no purpose which would be served by additional hearings in this case.